UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILLIP D. AZOR,
    Plaintiff,

v.                                No. 3:19-cv-1068 (SRU)

COMMISSIONER SCOTT SEMPLE, et al.,
    Defendants.

## INITIAL REVIEW ORDER

On July 8, 2019, Phillip D. Azor, an inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against nine Connecticut Department of Correction ("DOC") officials in their individual and official capacities: Commissioner Scott Semple, Warden William Mulligan, Lieutenant Landolina, Lieutenant Angelakapalao, Lieutenant McCreary, Nurse John Doe, Nurse Hollie Good, Correction Officer Rivera, and Correction Officer Davis. Compl., Doc. No. 1. Azor seeks damages against the defendants for acting with deliberate indifference to his serious medical needs, in violation of his Eighth Amendment protection against cruel and unusual punishment, negligence, and supervisory liability. *Id.* at 12-26. For the following reasons, the complaint is dismissed in part.

    I.   Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they

are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.     Factual Allegations

Azor alleges the following facts. Sometime prior to May 24, 2018, Azor tore his anterior cruciate ligament ("ACL") and suffered nerve damage to his right leg and foot while playing basketball. *See* Compl. ¶¶ 1-3. On May 24, 2018, he wrote a Utilization Review Committee request to the medical unit at MWCI, asking that he be transported via a wheelchair-equipped van for his upcoming medical appointment at the UConn Health Center ("UConn"). *See* Compl. ¶ 3. Nurse Good responded to his request, stating that a wheelchair-equipped van would be provided for him for his next scheduled physical therapy session on July 31, 2018. *Id.* at ¶¶ 1, 3. On that date, Azor was notified that he would be transported to UConn in a regular van, without wheelchair accessibility. *Id.* at ¶ 2. In order to avoid missing his appointment, Azor agreed to ride in the van. *Id.* at ¶ 4. Officer Davis helped Azor onto the van. *Id.*

Upon his return to MWCI, Officer Davis opened the side door of the van and attempted to assist Azor in exiting the vehicle. Compl. ¶ 5. Because of his limited range of motion and the fact that his legs were shackled, Azor's right leg gave out, and he fell out of the van, hitting the concrete. *Id.* Davis immediately went to the Admitting and Processing ("A&P") room to

2

summon assistance. *Id.* He returned a short time later with another officer and a wheelchair for Azor. *Id.* Azor told the officers that he was in excruciating pain and that he believed he had suffered some nerve damage to his leg. *Id.* He asked that he immediately be transported to the hospital. *Id.* The officers then helped him into the wheelchair and brought him to the infirmary in his housing unit. *Id.* at ¶ 6.

While in the infirmary, Azor informed the on-duty nurse that he was in extreme pain and needed urgent care. Compl. ¶ 7. The nurse told Azor that he had to wait for the on-call physician to decide whether to send him to the hospital. *Id.* Later that afternoon, the on-call physician prescribed 800 mg of Ibuprofen for Azor's pain but did not order an x-ray. *Id.* at ¶ 8. Azor also informed the shift commander, Lieutenant McCreary, about his injury. *Id.* at ¶ 9. McCreary stated that he was aware of what had occurred and that Officer Rivera would be coming to draft a formal incident report and take photographs of Azor's injury, but Rivera never showed up. *Id.* at ¶ 10.

At approximately 9:20 p.m., Azor attempted to go to his cell using crutches. Compl. ¶ 11. However, when he rose from his wheelchair and attempted to lean on the crutches, his leg gave out again, and he fell onto the floor. *Id.* Azor was assisted back into his wheelchair and transported to the A&P room and waited for an ambulance to arrive to take him back to UConn. *Id.* at ¶ 12. There, Lieutenants Landolina and Angelakapalao informed Azor that there would be no ambulance and that he would again be transported to UConn in a regular van. *Id.* They also told him that, if he did not agree to be transported in the van, he would be documented for refusing transport. *Id.* Azor told both lieutenants that he was in extreme pain and was unable to bend his knee or climb onto the van. *Id.* The lieutenants told Azor to "suck it up" and that he would be sent back to his housing unit if he refused to get on the van. *Id.* Because Azor was in

desperate need of medical care, he climbed onto the van while in pain and with the assistance of several officers. *Id.*

On August 29, 2018, Azor underwent surgery on his right knee. Compl. ¶ 13. However, because of the events on July 31, 2018, he suffered physical and emotional injuries, including "shock, anxiety, embarrassment, loss of dignity, emotional distress, stress, loss of trust . . . extreme physical discomfort, and limited functionality of [his] lower extremities." *Id.* at ¶ 14.

III. Analysis

Azor is suing defendants Good, Davis, Rivera, Landolina, and Angelakapalao for violating his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs. Compl. at 12-16. He is pursuing the same claim against McCreary, Nurse John Doe, Warden Mulligan, and Commissioner Semple under a supervisory liability theory. *Id.* at 21-27. Finally, Azor is suing Good and Davis for negligence and negligence *per se*. *Id.* at 17-20. For the following reasons, I will permit Azor's Eighth Amendment claim to proceed against Landolina and Angelakapalao in their individual capacities but dismiss the remaining claims.

A. Official Capacity Claims

Azor states that he is suing all nine defendants in their individual and official capacities. Compl. at 1-2. To the extent he seeks monetary damages from the defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Because Azor only seeks damages and no equitable relief, all claims against the defendants in their official capacities are dismissed.

B. Deliberate Indifference to Medical Needs

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a claim for deliberate indifference to a serious medical need, Azor must show both that his need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Subjectively, the defendants must have been actually aware of a substantial risk that Azor would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin*, 467 F.3d at 280; *see also Estelle*, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Moreover, a difference of opinion regarding what constitutes an appropriate response and/or treatment to a prisoner's medical conditions does not establish an Eighth Amendment claim. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The act complained of must "shock[] the conscience" by constituting a "complete denial of, or intentional effort to delay access to, medical care, or a reckless or callous indifference" to the prisoner's well-being. *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (quoting *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

Azor has alleged sufficient facts to satisfy the objective prong of the Eighth Amendment standard. He alleges that he suffered from a serious injury in his leg both before and after the UConn trip on July 31, 2018, leaving him with limited mobility and extreme pain. Construing his allegations liberally, I will permit his Eighth Amendment claim to proceed against Landolina and Angelakapalao, who told him that he would be sent back to his housing unit and documented for refusing a medical transport if he did not "suck it up" and enter the regular transport van. Although it is not entirely clear from the complaint whether those defendants assisted Azor into the van or had anything to do with the decision to use a regular van over an ambulance, I will allow the claim to proceed against them at this time.

Azor has not, however, stated a plausible Eighth Amendment claim against Good, Davis, or Rivera. He alleges that Good informed him that he would have a wheelchair-equipped van for his July 31 medical appointment, but on that date, he was forced to ride in a regular transport van. Compl. ¶¶ 1-3. There are no facts showing whether Good was personally involved in the decision to later deny Azor a wheelchair-equipped van, and if so, whether that decision was the result of deliberate indifference to Azor's medical needs. Similarly, Azor alleges that Davis assisted him when he was entering and exiting the transport van and summoned other assistance for him when he fell off the van onto the concrete. *Id.* at ¶¶ 4-6. There are no facts showing that Davis ever disregarded a substantial risk of harm to Azor. Finally, the only allegation against Rivera is that he never showed up to draft an incident report or take photographs of Azor's injuries, despite McCreary's statement that he would do so. *Id.* at ¶ 10. That allegation, alone, is insufficient to show that Rivera was even aware of Azor's condition, let alone whether he acted with deliberate indifference. Therefore, the Eighth Amendment claims against Good, Davis, and Rivera are dismissed without prejudice.

C. Supervisory Liability

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Although he does not allege facts showing their direct involvement in the denial of a wheelchair-equipped transport van or the response to his injuries on July 31, 2018, Azor is suing Doe, McCreary, Mulligan, and Semple under a theory supervisory liability.

A plaintiff who sues a supervisory official for damages can show the official's personal involvement in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In this case, Azor has not alleged any facts showing that Doe, Mulligan, or Semple were even aware of his condition or the injuries he sustained on July 31, 2018. The fact that they occupy supervisory positions is insufficient to establish their personal involvement in the constitutional deprivation. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Moreover, the only allegation against McCreary is that he informed Azor that Rivera would be coming to evaluate Azor's injury on July 31, but Rivera never showed up. That fact, alone, does not show that McCreary failed to take any corrective action in response to Azor's injury, created a policy or custom that ultimately led to

7

Azor's injuries, or was grossly negligent in supervising other officers. Therefore, the claims against McCreary, Doe, Mulligan, and Semple are dismissed without prejudice for failure to allege personal involvement.

    D.  Negligence

Finally, Azor is suing Good and Davis under theories of negligence and negligence *per se*. Compl. at 17-20. It is well established that such claims are not cognizable in an action for damages under section 1983. *See Salahuddin*, 467 F.3d at 280; *Chance*, 143 F.3d at 703; *Pabon v. Wright,* 2004 WL 628784, at *5 (S.D.N.Y. Mar. 29, 2004), *aff'd,* 459 F.3d 241 (2d Cir. 2006). Moreover, such claims against state officials are also barred by Conn. Gen. Stat. § 4-165.[1] Therefore, the negligence claims against Good and Davis are dismissed with prejudice.

## ORDERS

(1) The Eighth Amendment claim for deliberate indifference to medical needs may proceed against Landolina and Angelakapalao in their individual capacities for damages. The Eighth Amendment claim against the remaining defendants is dismissed without prejudice. To the extent Azor believes he can allege additional facts supporting an Eighth Amendment claim against Semple, Mulligan, McCreary, John Doe, Good, Rivera, and Davis in light of the factual deficiencies explained above, he may file an amended complaint within **thirty (30) days** from the date of this order. The amended complaint must show each defendant's personal involvement in the constitutional deprivation. Failure to file an amended complaint within **thirty (30) days** from the date of this order will result in the dismissal of all claims against those

---

[1] "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a).

defendants with prejudice.  The official capacity claims for damages and negligence claims are dismissed with prejudice and may not be restated in the amended complaint.

(2) The clerk shall verify the current work addresses for Landolina and Angelakapalao with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at the confirmed addresses within **twenty-one (21) days** of this order, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall mail a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the court.  The order can also be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Azor changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Azor must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of September 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge